Leona G. KIDD et al., Appellants,

v.

Rudolph V. RASMUS, Appellee.

No. 12882.

Court of Civil Appeals of Texas.

Galveston.

Dec. 22, 1955.

Rehearing Denied Jan. 12, 1956.

Pritchett Harvey, Houston, for appellants.

Aynesworth & Mann, and Kenneth H. Aynesworth, Jr., Houston, for appellee.

GANNON, Justice.

Suit in trespass-to-try-title by appellants, Leona Gee Kidd and husband, Melvin Kidd, against Rudolph Rasmus, the appellee, as defendant. Plaintiffs' petition contains, in addition to the usual allegations in trespass-to-try-title, a separate count bringing in issue the validity of a tax foreclosure judgment as against appellants, or more precisely whether appellants were properly parties to such judgment under the designation of unknown persons and whether they are therefore bound by it pursuant to service by publication, as held by the trial court.

At the time of the filing of the amended petition upon which the judgment in the tax suit is based, and as well at the time of the service of citation by publication thereon, Leona Gee Kidd was a married woman, the wife of Melvin Kidd. She was born Leona Gee Thompson and at all material times Leona Gee Thompson appeared from the Deed Records of Harris County, Texas, the county in which the land is situated, to be a record owner. At all material times the District Attorney in charge of the State's tax foreclosure suit had no actual knowledge of the status—whether married or single—of Leona Gee Thompson and therefore no actual knowledge of Leona Gee Kidd under her husband's surname, nor did he have any knowledge of the whereabouts of the person born Leona Gee Thompson.

Before we review the facts we refer to certain applicable principles of law.

In 65 C.J.S., Names, § 3 c, p. 4, it is said, "At marriage the wife takes the husband's surname which becomes her legal name. Her maiden surname is absolutely lost and she ceases to be known thereby." This is true in Texas. Beginning with Freeman v. Hawkins, 1890, 77 Tex. 498, 14 S.W. 364, 365, and as late as Cloud v. McK'y, Tex.Civ.App.1948, 216 S.W.2d 285, it is held that where a married woman is sued under her maiden name she is not thereby constituted a party and is not bound by the judgment—at least where citation is by publication and no principle of estoppel or laches comes into play. In Freeman v. Hawkins, Mary E. Robinson was made defendant in a suit where citation was had by publication. At the time of the institution of the suit and of service by publication, Mary E. Robinson had become the wife of D. C. Freeman, so that her legal name had become Mary E. Freeman. Justice Stayton, in writing for the court, said: "She was not a party to the suit, and is not bound by the judgment; and it should not have been admitted for any purpose."

In determining who are unknown owners so as to be bound when sued under that designation, the Statute, Article 7345b, § 3(a), V.A.T.S., is to be looked to. It is there provided, "When the *names* of the owner or owners of the property against which foreclosure of the tax lien is sought are *unknown to the attorney filing the suit*

*for the plaintiff taxing unit, such unknown owner or owners* may be made parties and given notice under the designation 'unknown owner or owners of the hereinafter described land'; * * * (Emphasis ours.) This same subdivision of the Statute expressly provides that record owners are not to be included in the designation "unknown owners." See also Article 7342, formerly Article 7698, V.A.T.S. 1914, which is referred to in Bomar v. Runge, Tex.Civ.App. Austin, 1920, 225 S.W. 287, 288, where in regard to who are unknown owners it is said of a judgment in a tax suit against unknown owners, "The judgment in the tax suit seems to be in all things regular and valid as against the defendant therein. If the appellee was the defendant in such suit, it is binding as to him. If he was not the defendant therein, it is void as to him, in that the record shows in such case that he was not cited and did not appear. The only party cited was 'the unknown owner' of the land. Was the defendant the unknown owner, as that term is used in the statute, which authorizes suit to recover taxes due on land to be brought against the unknown owner? An 'unknown owner,' as defined by the statute (article 7698), is one who is in fact unknown to the attorney representing the state, and after inquiry cannot be ascertained by him." See also Scales v. Wren, 1910, 103 Tex. 304, 127 S.W. 164, holding that a person is not an unknown owner "whose name and residence could have been discovered upon proper inquiry."

The gist of such cases as Bomar v. Runge and Scales v. Wren is that constructive knowledge is imputed to the State's attorney of the names of all claimants whose interests could have been ascertained by the exercise of reasonable diligence. 40 Tex.Jur., Title "Taxation," Sec. 172, page 239. Such knowledge is imputed sometimes on fact findings and sometimes as a matter of law.

The facts in the present case are these: The married plaintiff, Leona Gee Kidd, was born in 1917, the child of Louise and Jack Thompson. Her grandmother's name was Leona Shephard. By deed dated September 3, 1925, the property in dispute was deeded to Leona Shephard for life, with remainder to the plaintiff under the name Leona Gee Thompson. At that time the plaintiff was a child of tender years and was known as and by her then legal maiden name of Leona Gee Thompson.

The plaintiff's mother died in 1924. At or about that time plaintiff and her grandmother, Leona Shephard, removed from Harris County to La Marque in Galveston County, to live with a distant cousin—a woman known as L. K. Bell. About 1926 plaintiff's grandmother, Leona Shephard, died; her life estate terminated and Leona Gee Thompson became the fee owner. At this time, Leona Gee Thompson was 10 or 11 years of age. Thereafter the plaintiff continued to live away from Harris County and in Galveston County with her cousin, L. K. Bell. At an early age she dropped her legal surname of Thompson and commenced going under the surname of Bell, and became generally known as Leona Gee Bell, all the while remaining at La Marque in Galveston County up until her marriage in that County on the 31st day of December, 1941, to Melvin Kidd. The plaintiff was married under the name "Leona Bell" and the return and record of the license in Galveston County so shows.

Plaintiff testified that at the time of her marriage she bore and was generally known by the name "Leona Gee Bell"; that upon her marriage she assumed her husband's surname of Kidd and became generally known as Leona Gee Kidd. Since her marriage plaintiff has never gone by the name "Leona Gee Thompson" but only by the name "Leona Gee Kidd."

About six months after her marriage, that is to say, in the summer of 1942, plaintiff and her husband went to Seattle, Washington, where they have ever since made their home. Since removing to Washington State plaintiff has been in Texas only three times and then only on visits to relatives at La Marque and Hitchcock in Galveston County.

█ The trial court found on ample evidence that plaintiff has never had posses-

sion of the property in controversy either in person or through tenants.

About 1926 L. K. Bell was appointed guardian of the person and estate of Leona Gee Thompson by the county court of Harris County. The guardianship remained open until February 10, 1939, when the ward, having become of age, it was closed.

The land in controversy was never rendered for taxation by either Leona Gee Thompson, Leona Gee Kidd or L. K. Bell, and was at all times carried on the unrendered rolls. However, from shortly after her appointment as guardian the land was assessed in the name of L. K. Bell. Aside from paying the taxes for the year 1934 during 1940, and the taxes for the year 1933 during 1941, L. K. Bell, after her discharge as guardian, did nothing to take or maintain actual or constructive possession of the property either for herself or on behalf of the plaintiff. About 1940 one Willis Kelley entered on the property without the knowledge or consent of the plaintiff or of said L. K. Bell, and did not at any time attorn to either of them. He remained in possession until date of judgment. At some indeterminate time, during the period of his possession, said Willis Kelley commenced to claim title to the property adversely to the true owner.

The tax suit involved was originally filed during the year 1938. It pended on the docket for many years, when on July 24, 1947, an amended petition was filed on behalf of the State of Texas and the County of Harris, as plaintiffs, naming as defendants *"The unknown owner or owners of said property* and Leona Gee Thompson and Leona Shephard, whose residences are unknown, the unknown spouse of Leona Gee Thompson and the unknown spouse of Leona Shepard, whose names and residences are unknown, and if deceased, the heirs and unknown heirs of Leona Gee Thompson, deceased, the unknown spouse or spouses of Leona Gee Thompson, deceased, and the heirs and unknown heirs of the unknown spouse or spouses of the said Leona Gee Thompson, deceased, whose names and residences are unknown, the heirs and unknown heirs of Leona Shepard, deceased, and the unknown spouse or spouses of Leona Shepard, deceased, and the heirs and unknown heirs of the unknown spouse or spouses of the said Leona Shepard, deceased, whose names and residences are unknown, the City of Houston and the Houston Independent School District, Willis Kelley, and *all other persons owning or claiming any legal or equitable interest in said property."* The suit was to recover taxes for the years 1929 through 1932 and 1935 through 1946. Service by publication against all unknown owners was legally and properly had pursuant to properly executed affidavit of the attorney for the State and County, Mr. W. K. Richardson, Assistant Criminal District Attorney of Harris County, Texas. The affidavit includes the following: "The names * * * and residence of any and all other persons owning or claiming any legal or equitable interest in the property described in said petition are unknown to said Plaintiff and to this Affiant, and after due diligent inquiry cannot be ascertained." It is to be noted that while Leona Gee Thompson and her unknown spouse are made parties defendant, neither Leona Gee Kidd nor Melvin Kidd are made parties under those names.

The trial court found, and it is not disputed, that in his effort to ascertain the true names of the owners of the property the State attorney searched every directory and source of information reasonably available to him but that there was nothing whatever in the records of the Assessor and Collector of Taxes or in the office of the Clerk of the County Court or in the office of the District Attorney or in any other public office or record in Harris County giving the residence address or whereabouts of Leona Gee Thompson or revealing that she had married Melvin Kidd or that she had become known as Leona Gee Kidd. It is also undisputed that such information was not available to the attorney from any private record or any other source in Harris County. The court also found on undisputed evidence that had the

District Attorney searched the records of Galveston County he would have been unable to learn anything about said plaintiff because she had married Melvin Kidd under the surname "Bell" and not under her legal surname "Thompson."

The evidence shows that Mr. Richardson in the course of his investigation learned of the fact that L. K. Bell had been appointed guardian for Leona Gee Thompson in 1926 and that the guardianship was closed in 1939. It also showed that Mr. Richardson had addressed several letters to L. K. Bell at La Marque, Galveston County, Texas, that at one time L. K. Bell had been in touch with the District Attorney's office either personally or by mail and had paid the taxes for the years indicated above during the years indicated above. The evidence also showed that as of the date of the filing of the amended petition upon which the tax foreclosure case went to trial the District Attorney's office had lost contact with L. K. Bell and that several letters addressed to L. K. Bell, Box 645, La Marque, Texas, one as late as January 26, 1945, had remained unanswered.

Mr. Richardson testified to his handling of the tax foreclosure suit and to the methods generally followed to locate the true owners or defendants in such suit and in particular to the exhaustive efforts made by his office to locate the true owners of the subject property. At one point in his testimony he identified a handwritten notation on a copy of a letter dated February 13, 1946, addressed to Willis Kelley, substantially to the effect that, " * * * L. K. Bell or Mrs. T. K. Bell cannot be located * * *." Mr. Richardson had no independent recollection of the details of the handling of the tax suit but based upon a review of his file he testified that after a full and complete investigation he was unable to locate the true owners of the property, which resulted in his making the affidavit as a basis for citation by publication of the unknown owners. The trial court found on the above testimony and evidence, contrary to the contention of plaintiff, that Mr. Richardson had complied fully with every demand of due diligence to ascertain the true names and identity of all persons interested in the property.

The substance of plaintiff's contentions is: (1) Leona Gee Thompson was not, as of the date of the filing in 1947 of the petition upon which the tax judgment is based, the name of a legal person since after her marriage to Melvin Kidd upon December 31, 1941, there was no person in legal contemplation named Leona Gee Thompson, (2) Her position next above to the contrary notwithstanding, Leona Gee Thompson was, as of the date of the filing in 1947 of the petition upon which the tax judgment is based, the true legal name of the record owner of the subject property, so that Leona Gee Kidd (nee Thompson) could not be sued as an unknown owner although plaintiff's new and only legal surname "Kidd" was actually unknown to the plaintiff and its attorney in the tax suit. And this even though plaintiff's only true and legal surname "Kidd" could not have been ascertained by the plaintiff in the tax suit in the exercise of ordinary diligence, (3) The trial court's finding of due diligence upon the part of the State to ascertain the true name and identity of Leona Gee Kidd is without any evidence to support it and (4) is without sufficient evidence to support it because had the District Attorney gone to La Marque in Galveston County and sought out L. K. Bell he could and would have learned the true married surname of Leona Gee Thompson, to-wit, Leona Gee Kidd, and her residence and whereabouts. In this connection it should be stated that plaintiff Leona Gee Kidd did not introduce her cousin, L. K. Bell, as a witness at the trial, nor did she account for her failure to do so though the plaintiff testified by deposition that as of the time she, the plaintiff, was testifying L. K. Bell was living at La Marque, Texas, and (5) The trial court's finding, that plaintiff was not in pedal possession of the property at material times so as to visit notice of her true name, identity and whereabouts on the plaintiff in the tax

foreclosure suit, is contrary to the evidence.

■ While we can and do sustain plaintiff's first contention, Freeman v. Hawkins, and Cloud v. McK'y, supra, we cannot but hold that under the facts of this record plaintiff, Leona Gee Kidd, was at all material times an unknown owner within the meaning of the statutes permitting suits against unknown owners; and this is so because her true legal surname was actually unknown to the State's attorney. It is undoubtedly correct that upon her marriage in 1941 Leona Gee Thompson absolutely lost her maiden surname and acquired that of her husband. This being true, she was not a party to the tax suit under the name "Leona Gee Thompson." However, in our opinion she was a party as an unknown owner since we feel that the fact finding of the trial court, establishing that her true name, identity and whereabouts could not have been ascertained by the State's attorney in the exercise of due diligence, is amply supported by the record. The question of due diligence under this record was clearly one of fact which has been found against the appellant by the trial court on amply sufficient evidence. For an interesting discussion of the necessity in constructive service cases of pursuing inquiries beyond county limits, see Rue v. Quinn, 1902, 137 Cal. 651, 66 P. 216, 70 P. 732. We do not, by this, intend to imply that the record establishes that the State did not pursue its inquiries beyond the limits of Harris County. On the contrary, Mr. Richardson's notation on his letter to Willis Kelley of February 13, 1946, rather indicates that L. K. Bell could not be located even in Galveston County. Plaintiff's claim of pedal possession is based on the occupancy of Willis Kelley. The evidence and testimony concerning his possession are amply sufficient to support the trial court's finding that Willis Kelley at all times occupied the property, not as a tenant of plaintiff but rather as a naked trespasser and perhaps later as a limitation claimant solely on his own behalf.

■ We hold that plaintiff, Leona Gee Kidd, and her husband, Melvin Kidd, were properly sued as unknown owners in the tax foreclosure suit and that as such they were parties to and bound by the judgment therein, a sale under which has foreclosed their interest in the subject property.

Affirmed.